Good morning, Your Honor. May it please the Court, Patrick McMahon representing Officer Moore in the case of Werner v. Poulsbo. I'd like to reserve three minutes for rebuttal if I might. Your Honor, this case brings to light a significant issue on the doctrine of qualified immunity in that we simply have someone trying to raise a question of fact to get around the protections of the qualified immunity doctrine by simply saying, I was placed in a chokehold without any evidence establishing that whatsoever. And it almost seems to me... Well, he has his declaration in his testimony at the deposition. That's true, but it's an afterthought as to what was... Why is it an afterthought? That's his version of what happened. Well, that's his version. The officer's version may be entirely different, and if you read it, it's like you can't figure out whether they're at the same location at the same time. Well, the case... They have two different versions or two different understandings of what happened from their own perception. But I think the cases, Your Honor, go a little further than that and say there should be some objective evidence as to whether or not the level or quantum of force that was used or some objective evidence... So we're not supposed to consider the plaintiff's testimony? You can consider it, but whether or not it... We're supposed to say it's not credible? Given the fact that there was no objective evidence to support it, I believe it is not credible. Well, but this is not... We're not allowed to even review the summary judgment now. In other words, we're not even determining whether there is a material issue of fact. That's not what's on appeal. What's on appeal is a qualified immunity defense. And my understanding is we're supposed to credit the plaintiff's story and determine on that story whether there is a qualified immunity defense. Now, you're going to have another shot, but for present purposes, that's all we're allowed to do. Well, with all due respect, Your Honor, I think it goes a little further than that because there has been no application of the Graham v. Conner factors, which says even though there may be some diversion in facts, the court still needs to assess in a Fourth Amendment excessive force claim whether the quantum of force was excessive or not. But don't we have to take the facts the way that the plaintiff says they were? Even if you take the facts the way they're pled, if you apply the Graham v. Conner factors, it does not vitiate qualified immunity. Okay. Would you just tell me your version? Could you just help me and give me your version of the facts as you understand they were pled by the plaintiff? I'd be glad to. State Route 305 over in Poulsbo was a busy state route. Mr. Warner and his wife were approaching in a vehicle, had pulled their car off in an area that was somewhat suspect, if not illegally parked on that stretch of roadway. Officer Moore approached from the rear and noticed that both of them were flailing their arms around and appeared to be in an angry state where they were verbally arguing with one another. That wasn't what he said originally. What he said originally was that he stopped because they seemed to be elderly and he wanted to know if they needed any help. That was his first report. Then it changed after a while. I don't think it's disputed that they were arguing because the wife's testimony, Mr. Warner's wife's testimony does indicate that they were verbally arguing because they were late for a bus that she was taking to come over to Seattle. So when the officer did make contact having his emergency lights on, then the facts are that Mr. Warner got out of his vehicle and approached the officer in an aggressive fashion. That's not his facts. You see, this is why your briefs have not been useful and now your argument isn't useful because you have to talk about his facts. Even if you accept his facts. Okay. So you're asked to talk about his facts. All right. So if he approaches the officer and the officer gives him a command to remain in the car, he's obligated to go back to the car. He says he did. Well. He says he turned around and went back. All right. I mean, you're just disputing his facts. Well, it seems to me if the court applied, if the district court applied judicial estoppel, saying that he was resisting arrest, that the arrest was lawful in the first place, then the question is when was he resisting arrest? Well, I think that's mixing apples and oranges, Your Honor, because the court, it all occurred in one continuity of action. Mr. Warner was resisting arrest, therefore there's probable cause for his arrest, and the quantum of force to effectuate that arrest under Graham is what the court's analysis has to focus on. As you understand the plaintiff's facts. I understand they divert from our facts. The officer approached and the gentleman went back to the car, and then there was a choke hold. Isn't that what the plaintiff alleged? As he was walking back to the car. As he was walking back to the car. Correct.  Is that right? Is that what the plaintiff alleged? That's what he alleged. All right. So what you need to tell us, I mean, I thought you started in the right direction, except you keep getting distracted by your side's facts. So if you could stick to their side's facts and tell us why, I thought what you were going to tell us was even on their side's facts, why the grave factors aren't met. And if you want to be helpful, that's what you will tell us. Thank you. After he returns to his car, then the officer still has control of the scene and the situation. So he is allowed under virtually all the cases in the Ninth Circuit to use some quantum of force to For what? For a man who was – it seems to me the only way you basically get anywhere is to say that this wasn't quantum of force, sufficient or – but if I am doing what the policeman told me to do, which is what he says he was doing, then why does the policeman get to come up to him from behind and assault him essentially? And I think that's the issue you have to deal with, but I don't think it was an assault and it's overstating. I think it was a use of force to control the situation. Okay, but what was he trying to control on the plaintiff's facts? Well, I think given the totality of the circumstances, the wife leaves the car after the officer observes them arguing. He goes back to the vehicle. There is a degree of an immediacy of threat to the officer in a domestic violence situation that what's in that car – That's the violence? Potential domestic violence as far as verbal domestic violence. Really? I mean, whenever two people have an argument with a raised voice, that's potential domestic violence. Well, when the court says that – when he admitted that he was resisting arrest for the offense he was charged with, then there's certainly probable cause for the officer to – What was he charged with? He was charged with resisting arrest. No, he was charged with assault on a police officer and obstruction. Right, not with domestic violence. Well, he was obstructing the domestic violence investigation. Why would the wife leave that situation when they were arguing? Why would he come out charging at the officer at the time? And why would he leave and go back to the car? He says he wasn't charging. I mean, this is why you're not being helpful. Well, I can't be helpful if someone just puts in something that directly controverts everything as an afterthought. And that's why I think you have to go further, Your Honor, and say, what is any objective evidence that there was a chokehold that was asserted that leads to an excessive force claim? He and his wife both said there was. That's all. Well, all of Mr. Werner's statements immediately after, which are the most credible, I think, are that he was complaining about a cardiac problem, complaining that the taser was – the use of force had exceeded the Fourth Amendment parameters, and there was never a mention in any of the post-arrest incidents of a chokehold. That wasn't brought up until the complaint was filed and in response to summary judgment. And you will tell that to the jury, and they may well believe you. Pardon? Well, let me ask you a question, just to clarify the record. So there was another part of this incident that evolved, which was the tasing, correct? Correct. Now, when you read the district court's order, it's not clear to me how the district court treated that separately from the chokehold. But I gather in the briefs, you represent in the briefs, that the district court granted – did grant qualified immunity as to the use of the taser gun, on the grounds that the law was not clearly established at the time, primarily citing the Ninth Circuit's opinion in Matos v. whatever it was, Matos v. Argeron. I believe that's correct, Your Honor. I think that the district court interspersed the two instances they were happening at the same time and said the tasing incident was not excessive force, but the chokehold was excessive force. Well, it's not – saying it's not – it wasn't – what I understood the district court to do was, at least according to the brief, I think which brief I was reading, but there's a statement in there that the district court granted qualified immunity to Officer Moore with respect to the use of the taser on the grounds that the law with respect to excessive force and the use of tasers was not clearly established at the time of this incident. Is that right? That's correct. Is that what he did? I believe that's what he did. Where is that in the – in the – Did he say it orally at the hearing? Well, I guess – I don't know what's going on here. I believe it's stated in the order, Your Honor. I apologize for not being able to find it. Why don't you take – you wanted to reserve some time for – Can I ask – Go ahead. Let me ask a question here. There was a diversion agreement and the plaintiff agreed that he was resisting arrest. What is your understanding of what that stipulation meant? The stipulation was that there's a stipulation that there was probable cause for the resisting arrest charge, that in exchange for a plea bargain from the original charge, which is a felony for assault in the third degree, the plea bargain arrangement said that if you stipulate that there was probable cause and that you did resist arrest, that will amend down to a lower charge. And what is your understanding of what – of when the resisting arrest took place, what he was agreeing to? I believe the resisting arrest took place at the time that they struggled with one another and the taser was applied simultaneously with the other use of force, which was classified later as a chokehold. I believe all of that struggle was resisting arrest. What was that struggle? Okay. Well, I think it's verified – The chokehold incident occurred first. Pardon? The chokehold incident occurred first. Well, according to the plaintiff's version of the text. Yes. But that doesn't make sense. And that's the way the district court judge perceived it as well. And I don't believe that makes sense. Was the factual statement with regard to the resisting arrest at all specific in this regard? When he pled to resisting arrest and he agreed that there would be probable cause of that, was there anything more specific as to which would affect this question that we're asking now? No, I don't believe so. So really you can't tell from that stipulation when he was a resisting arrest. Well, other than the resisting arrest during the totality of the circumstances. At some point he was resisting arrest. Right. And I believe if you look at the fellow officer, which is the backup officer that arrived, the female officer, which is part of the record at page 210, Officer Smalden had seen both of them struggling with one another, and she needed to come onto the scene as well and use her level of force to a certain degree to get handcuffs on Mr. Warner, which I think emphasizes that this all was one simultaneous action. Plus the witnesses to the event from Officer Smalden also saw that Mr. Warner, despite his version of the facts, was attacking him. So that's why my emphasis is on the qualified immunity has to look at the quantum of force during the totality of the circumstances that were used, whether it was a hands-on or whether it was a choke hold, was not as excessive as a Taser incident, but it was all part and parcel of what Mr. Warner has agreed to was an action of resisting arrest. And there weren't more than one arrest. It was one arrest for the circumstances that he viewed when he saw them on the side of the roadway. Did you want to save your time? I will. I'll find that part on the recording. Okay. Thank you. Your Honor, it's Eric Johnson for Lief Verner, the complainant. Lief Verner, he's a Swedish, he's from Sweden. He was a civil engineer, retired 69-year-old gentleman. He was dropping his wife off at the bus stop. His wife's an African-American woman around the same age, art professor, and interacted with Officer Moore, who... And they were yelling at each other. Oh, absolutely not. I think she characterized as chiding, and that they commonly chided each other. She was late for an appointment. She had to travel to Seattle, and she did not drive, so he was dropping her at the bus stop, which he often did. And she characterized it as chiding. But Officer Moore, who drove up and was across the street, I mean, it's obvious from his reports that he's trying to come up with some reason, other than trying to help an elderly couple, to somehow justify his presence and his interaction with Mr. and Mrs. Verner. This is my problem, crediting everything he says. The chokehold testimony is pretty vague, because, I mean, certainly, mostly he was concerned about the taser, in terms of what he thought really affected him later, and at least until he became clear about this problem with the resisting arrest plea, his evidence of later trauma and so on seemed to emphasize the taser. So the question is, I mean, what do we know about the degree of force that was characterized as a chokehold, and how does it fit into the crime factors? Well, I'm not sure that – I wouldn't characterize it as an afterthought, because both Lief – and I'll call Lief Verner Lief. I'm sorry? Mr. Verner, Lief Verner. Right. And his wife both have testified in complaints to the city and later on in deposition and other documents that he was trying to comply with the officer's order. And the guy came up behind him and grabbed him in some fashion. And put him into a chokehold. All right, so I guess the question is, is that per se excessive force because there was no reason for any force? I mean, is that basically your argument? Well, absolutely. It's a dangerous – it's a dangerous physical – Well, but he calls it a chokehold. But what does he say actually happened? Well, both he and his wife said he was grabbed around the neck, in a choking manner, around the neck and pulled backwards. And the tase came – you know, then he couldn't breathe. And he talks about not being able to breathe. And he said he was twisting, trying to understand why his air was cut off. And at that point, the taser came out. All right, so you think there was testimony that his air was cut off by the weapon? Absolutely, Your Honor, yes. Both in complaints and then later on when he saw Dr. Schillinger, the clinical psychologist, and the other doctors, but Schillinger specifically, that he had – he was diagnosed with post-traumatic stress disorder. But most of that was around the taser. I mean, one of the problems you're going to have in trying this case is separating those pieces out. I don't think that will be a problem, Your Honor. Can I ask this? If there was a stipulation that he – the facts would show that he was resisting arrest. Now, what is your understanding of that? Because my understanding of Washington law is that you can't resist arrest unless the – you can't be guilty of resisting arrest unless the arrest is lawful. Right. Well, the charging document – he was originally charged with – and the charging document reads something like assault by using a taser on a police officer. So the charging document was – What? I know it was defective. It was mispled. It basically said there was an assault with a taser upon the police officer. Right. So, I mean, if I was a prosecutor, I wouldn't want that as my charging document, and I would welcome a – you know, some kind of lesser included agreement or some way to divert the prosecution. So what was it? Well, he was charged with – he was – the diversion agreement or – Yeah. Was it that he was agreeing that the facts would show that he was resisting arrest? Well, at some point resisting arrest. Yeah, but the question is – and I was curious about this, too. I think that Washington Law may be murky on this. In any event, you haven't briefed it, which is whether or not he was resisting a lawful arrest. Does it matter in Washington whether it's a lawful arrest or not, i.e. arrest as to which there was probable cause for something other than resisting arrest? Well, I would hope so. Yeah. There was no lawful arrest. But you're not really arguing that there wasn't – that there was an unlawful seizure as such other than the grain seizure. Well, there was the seizure that we focused on at least based on what the court – In order to plea to his resisting arrest, he has to plea that there was probable cause for something lawful. Right, right. And that's argued that Officer Morris suspected DV, domestic violence, verbal. Is it really a crime in Washington to yell at your wife? Not – no. It closely resembles a gross misdemeanor, some kind of a harassment-style misdemeanor crime. But, no, it would have to be committed in his presence, and there was no – he didn't – and, again, it's apparent that Officer Morris came up with that to try to – But are you stuck with it? I mean, the real question is are you stuck with it because of the resisting arrest version plea? No. Why not? Because the – because at most there was not probable cause to arrest even on – even for the – But you pleaded. It's there. It's judicially stated that he was resisting a lawful arrest. So how do you get excessive force given that? Well, at some point he was – the unprovoked attack, which Officer Moore, by the way, has – if you read some of the complaints, you can see that he has – Okay, but what is the scenario that says that he was resisting a lawful arrest but there was still – Well, for some reason he took a disliking to Mr. Verner and decided to have some – I don't know if he considers it fun or what, but he came up from behind Verner and put him in a chokehold, and then as he's struggling to breathe, he gets tased. So in your position – Then he's on his knees crawling away. He crawls into a ditch. Okay. But it's your position that at the point that he went up to him and did this, that there wasn't probable cause to think he – to arrest him, or he wasn't resisting arrest, so the force was excessive, or what exactly? There was no probable cause to arrest. There's no basis for an arrest. Then. But there was later? I mean, it's very – I mean, you've got a real problem because of the plea, and the question is how do you deal with it? Well, it's not really a plea. I mean, it's a stipulation. It's a – Well, it's a stipulation of probable cause that you were resisting arrest, that he was resisting arrest. It stipulates that there's facts sufficient that later on there could be a proof of an offense. Okay. It doesn't stipulate the timing of the offense, which, you know, really what the officer and even the court's decision focused on is this resisting part apparently occurred after Moore is crawling away in the ditch to get away from the Taser and is picked out of the ditch and struggles while he's being handcuffed on the car of Officer Moore. And that's when Officer Smullin then comes up and tries to assist in putting the handcuffs on. But that all – all of that stuff occurs. Well, that has to do with the resisting, but there still had to be a crime, no? Probable cause as to some crime? Yeah, and I – and you know what? I don't – apparently, you know, that was Mr. Verner's decision to agree that maybe he – But he did it. Maybe he shouldn't have struggled at that point. At that point when he was being handcuffed. But there was no obvious crime. I mean, he's being charged with an assault. Well, what was his – what was he being arrested for? That's the problem. There must have been a lawful arrest, but he was arrested resisting. I can't think of a reason why – there was no reason to do that. When he entered into the diversion agreement, did he have to actually plead to a particular count or anything? No. But he did enter the stipulation, as Judge Bresan and I are sure – Your Honor, I wasn't there, but – Well, but there's a written document, and it says that he stipulated that there was probable cause to arrest him for resisting arrest. Well, there wasn't any proof. The stipulation reads something like – well, it reads this, the defendant agrees that there are facts sufficient to prove the charge of resisting arrest beyond a reasonable doubt. Now, it could be, I suppose, that the crime was assault on the officer during the taser thing and the resisting arrest was during the handcuffing. I suppose that's a plausible scenario. Right, and I believe that's probably what the court – what the district court was thinking. And none of those would have anything to do with the earlier chokehold period. That's what their order seems to – that's what the order seems to say. Did the district judge find that on the use of the taser that the officer was entitled to qualify to meet? I don't believe that's what the order says. There's something in the brief, though, that – one of the briefs, I think it's the city's brief. The city reads into the order that that's what the court's saying, but the court doesn't say that. It's kind of almost like – it's a hunch. It's kind of like Officer Moore's suspicion when he comes up on the car. It's just a hunch of what's being said and what's being – so I wouldn't – I don't see anywhere in the court's order that they're granting anything regarding the taser. The taser occurred more than – there's a factual issue about how many times the taser was used. Is it your position that the use of the taser is still in play? Yes, Your Honor. Why is it – why – is it – so their argument was, as I understood it, was that at least with respect to the taser that at the time of this incident, the law with respect to using a taser when it would rise to the level of excessive force had not yet been clearly established in this circuit, which is an entirely different issue. Well, I know there were some important cases on the calendar, but I don't know if that's true or not. I'm sorry? I don't know if that's true or not. What? That it was an unresolved issue as to excessive force by use of the taser. Don't we have – so our bank case is saying that? Don't we have our bank case is saying that? Your Honor, if I can get it clearly that it's okay to use a taser, it's not excessive force to use a taser. It would be excessive under circumstances. Presumably any force would be excessive if there was no reason to use it. That's true. But at the time, he – I mean, both he and his wife agree that he was struggling out of the choke hold. Right. He was twisting, trying to breathe. He's squeaking out of it, or whatever the term he used. Right. That is a good word, dusk. So in terms of the facts of the unbanked cases, he was actually somewhat more actively resisting arrest, perhaps, than was true in the cases before the court, the Mattos and Brooks cases, where they were basically – in Brooks, she was basically sitting still and firmly, but she wasn't struggling. So there is a real problem. Let's just assume there's a problem. So what do we do with it now in terms of – and the district court's opinion focuses entirely on the choke hold point. He doesn't say the reason why, but the likely reason why is the reason we're talking about now, i.e., the Taser Part has problems, given the established case law. Well, I mean, all I can say, Your Honor, I can't change the facts, but it apparently was not – it was not perpetrated at the choke hold and what led up to it. It was not in good faith. It was malicious. It was sadistic, and it was intended to escalate the matter. But what we're trying to ask is, Do we characterize the district court's opinion as having determined that the Taser Part is subject to qualified immunity, or do we have to review that as holding that it wasn't subject to qualified immunity and decide whether it was? Well, you know, my client's here because the force, you know, the restraint, the choke hold, the Taser, we're going to argue and we're going to try to prove facts that are at issue that all of that was excessive force. And whether the – Well, it may not be excessive force. The question was whether there was qualified immunity as to the Taser Part of it. Well, there was not probable cause. There was not probable cause to arrest or stop, and there was not – You've never argued that. You've never argued that in your briefs. There's nothing in your briefs about whether there was probable cause to stop him or not, or to charge him with something. I think it was briefed, Your Honor. I don't know. I have to look and see, but I'm sure it was. Okay. Just shortly. I cite the Washington statute that talks about whether there's – whether you need to – whether the alleged offense needs to be committed in the presence of the officer. Thank you. Your time is up. Thank you. I believe the city had about a minute and a half. A minute and 42 seconds. Thank you, Your Honor. I appreciate the court's patience. I've reviewed the order in response to your question on page 9 of the court's order. Page 9? Excuse me. All right. Well, I've got page 9 right here. It says under the qualified immunity assessment, taking the facts in light most favorable to Warner, the court concludes that Warner has shown a constitutional violation occurred if and when Warner was returning to his vehicle as instructed by Moore, and Moore proceeded to put a chokehold on Warner and arrest him. The way I interpret that is to say the tasing incident occurred before the alleged chokehold incident, and the court has granted qualified immunity on the tasing portion of the case, and the chokehold seems to be the issue that the court at the lower level was struggling with, whether that was an excessive use of force. Where does it say anything about tasing? Yeah, it doesn't say anything about tasing. Well, the whole case was premised on tasing. That's part of the problem that I think that the bench is facing in this case. His whole problem, his whole complaint and all of the evidence that he was submitting was that I was tasered. My complaint to the Poulsbo Police Department was that I was tasered. I went to a cardiologist because of the tasing incident and to show that tasing causes some cardiac problems. But, if any, you said that you understood the district court statement here to mean that the tasing incident took place first? Well, I think it was under one circumstance of struggling. According to Officer Moore's situation, and the only thing I've read in this is that the tasing incident came second. Well, I don't think that's accurate. But what the district court says is that the court also concludes there are issues of material fact as to whether Moore violated his constitutional rights by using excessive force, even assuming Werner later resisted arrest, which makes it sound like something happened afterwards. Well, I think by not addressing the tasing incident and only referencing on the so-called incident that qualified, because why other would the district court have granted qualified immunity under the excessive force claim for resisting arrest, only leaving open the so-called question. So the tasing incident, I think, has been resolved that qualified immunity was granted. Because of the law. Okay. Okay, thank you. Thank you. Thank you. We appreciate your arguments. The matter is submitted.
judges: Schroeder, Paez, Berzon